## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DUSTI  LYNNE CARRIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-189-PJC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff, Dusti Lynne Carrier ("Carrier"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying Carrier's application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3).   For the reasons discussed below, the Commissioner's decision is **AFFIRMED.**

### Procedural History

Carrier filed her application for supplemental security income benefits with a protective filing date of May 8, 2012.  [R. 16, R.136]. She originally alleged onset of disability as of October 13, 2004. [R. 16, R. 124]. The application was denied initially and on reconsideration. [R.50-72]. An administrative hearing was held before Administrative Law Judge Richard J. Kallsnick on September 26, 2013.  [R. 27-49]. At the hearing, Carrier amended her alleged onset date to June 5, 2012.  [R. 47].  By decision dated November 12, 2013, the ALJ determined Carrier was not disabled.  [R. 16-21].  The Appeals Council denied Carrier's request for review on February 18, 2015.  [R. 1-7].  Thus, the decision of the ALJ represents the Commissioner's

final decision for purposes of this appeal.  20 C.F.R. § 416.1481. Carrier timely sought review by this court.

### Claimant's Background

Carrier was born on January 29, 1991, and was 22 years old at the time of the ALJ's decision.  [R. 31, R. 124].  She has an eleventh grade education, and does not have a GED.  [R. 31].  Carrier has never worked.  *Id.*

At a hearing on September 26, 2013, Carrier testified that injuries from a motor vehicle accident in October 2004 prevent her from being able to work.  [R.32]. In the accident, she broke her right humerus, tore the meniscus of her right knee, crushed her pelvis and broke her sacrum. [R. 32-33].  She testified that, due to pain in her right arm, she can lift no more than ten pounds for two hours a day and it hurts to use the fingers on that hand.  [R. 34-35].  She cannot type on a keyboard with her right hand because her hand and arm start hurting.  [R. 35].  She has pain in her lower back ninety percent of the time; the only time it is not bad is when she is lying down. [R. 36]. When her back hurts, she has to lie down for an hour or two more than once a day.  [R. 41].  She also would be unable to keep up any pace if she worked.  [R. 40-41].  She can sit for thirty-five to forty-five minutes before she has to stand up. [R. 36].  If she doesn't adjust her posture while she's sitting, it hurts and her whole backside area gets completely numb.  [R. 37]. She can only walk fifteen to twenty minutes before her right knee starts hurting; after that, she has to lie down and prop her leg up on the couch or bed.  *Id.*   Walking also hurts her back, and she has to lie down frequently with a pillow under her leg.  [R. 37-38].  Due to her back pain, she would be unable to work eight hours per day, five days a week, and some days should would not even be able to make it to the jobsite.  [R. 38].  In the past, she has been on Norco 75s, 10s and oxycodone, and she used to go to a pain management doctor.  [R. 38-39].  Currently she takes

Tramadol, which "barely takes an edge off of it, if it even does that." [R. 39]. She takes Zoloft for depression; for the most part, it helps. [R. 39-40]. She also has ADHD, which makes it hard for her to sit still, and she can't concentrate on one thing for more than 20 minutes. [R. 40].

Before her accident, claimant used to ride horses, but because of her back injury, she is unable to do so anymore. *Id.* She has no social life. *Id.* She has three children, ages three, two and nine months. [R. 41]. She normally stays on the couch; the older two children listen pretty good and her mom and sister come over and help her take care of the children until her husband gets home. *Id.* She can hold her youngest child on her lap but cannot pick her up when she is standing up, because of her right arm and back. [R. 43]. When she doesn't have help with the children, she turns on cartoons and lets them do what they want until someone else gets there. [R. 42].

Claimant and her husband, Jacob Dwayne Carrier, both completed adult function reports. [R. 145-154 (Ex. 3E); R. 155-164 (Ex. 4E)]. Claimant reported that she has no problems with personal care. [R. 146]. She sometimes has problems sleeping because of pain and discomfort. [R. 156]. She takes care of her children and maintains the house on a daily basis. *Id.* She routinely feeds, clothes and bathes the children, fixes meals, cleans the house and does laundry. [R. 156-157]. She drives and goes shopping for food, hygiene items and necessities. [R. 158]. She watches her children play, watches television and plays video games every day, and talks to people on the phone; she does not go places on a regular basis but goes to doctors' appointments as needed. [R. 159]. She cannot go out hunting or fishing, or engage in social activities with friends and family because she is in too much pain. [R. 160]. Due to pain, she has problems with lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing and completing tasks. [R. 160]. She can walk about seven to ten minutes before needing to stop and

rest. *Id.*  She cannot pay attention for very long and has trouble following written and/or spoken instructions. *Id.* She doesn't handle stress or changes in routine well. [R. 161].  She is very emotional, terrified of surrounding vehicles and fearful of breaking bones again. *Id.* She has a knee brace, which she wears as needed. *Id.*

Carrier's husband generally concurred with claimant's report concerning her activities, capabilities and limitations. He stated she can walk for about 200 feet before needing to stop and rest, and can resume walking after ten to twenty minutes. [R. 150].  He stated that she follows written instructions well but spoken instructions have to be explained very carefully and slow. *Id.*

Claimant currently takes Zoloft for depression and Tramadol, Tylenol, Aleve and ibuprofen for pain. [R. 276 (Ex. 17E)].

Carrier was seen by consultative psychologist, Minor W. Gordon, Ph.D., on December 3, 2012. [R. 280-282 (Ex. 1F)].  Dr. Gordon reported that claimant alleged problems with her back and right arm secondary to residuals from the 2004 auto accident as her rationale for applying for disability benefits. [R. 281].  She did not allege any type of psychological disturbance that would preclude her from gainful employment. [R. 281].  She has never been treated by any type of mental health professional. *Id.*  Dr. Gordon assigned no diagnoses on AXIS I, AXIS II or AXIS IV, and gave her a GAF score of 80. *Id.*  Based on casual conversation, he estimated her level of intelligence as average to low average. *Id.* He commented that "[h]er direction appears to be governed by her roles as a mother and homemaker." *Id.*

Jerry Patton, D.O., performed a consultative physical examination of claimant on December 18, 2012. [R. 283-287 (Ex. 2F)].  She was seven months pregnant at the time. [R. 284].  She reported injuries to her lower back, pelvis, knee and upper right arm as a result of the

2004 vehicle accident. [R. 283].  She has had two surgeries on her right knee, five surgeries on her left arm and four surgeries on her pelvis. *Id.*  She also complained of chronic headaches.  *Id.* The doctor concluded she had normal range of motion of the lumbar, thoracic and cervical spine; deep tendon reflexes are +1 and equal; she was able to walk on her toes and heels without difficulty; she seemed to walk in a safe and stable manner and did not use an assistive device; however, she stated that she can only walk approximately thirty to fifty feet.  [R. 284].  She did not appear to be in pain while in the doctor's office, was able to get on and off the examination table without difficulty; had a grip strength of 5/5 with her hands; could oppose fingers to thumbs without difficulty; had good pedal pulses with no peripheral edema; and muscle masses were considered equal.  *Id.*  The doctor's impression was that Carrier has some lingering pain in her pelvis and low back; she stated her right knee is painful, but it appeared to be normal on inspection; she appeared to be using her arm, hand and shoulder in a normal fashion; she admitted to headaches; and she was seven months pregnant.  *Id.*

## Social Security Law and Standard of Review

To qualify for SSI under Title XVI of the Act, an individual must be financially eligible, file an application, and be under a "disability" as defined in the Act.  42 U.S.C. § 1382.  SSI payments cannot be made prior to the month following the month the claimant files an application.  *See* 20 C.F.R. § 416.335.

For purposes of SSI, a claimant is disabled under the Act only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1832c(1)(3)(B).  Social Security regulations implement a five-step sequential process to evaluate

a disability claim.  20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th

Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is

or is not disabled, evaluation under a subsequent step is not necessary."  *Lax*, 489 F.3d 1080,

1084 (10th Cir. 2007) (citation and quotation omitted).

At steps one through four of the five-step sequential evaluation process, the burden of

proof lies with the plaintiff.  *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Grogan v. Barnhart*, 399

F.3d 1257, 1261 (10th Cir. 2005) (citing *Williams v. Bowen*, 844 F.2d 748, 770-52 (10th Cir.

1988)).

Judicial review of the Commissioner's determination is limited in scope to two inquiries:

first, whether the decision was supported by substantial evidence; and, second, whether the

correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to

support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Wall*, 561

F.3d at 1052  (quotation and citation omitted).  Although the court will not reweigh the evidence,

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful
activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that
she has a medically severe impairment or combination of impairments that significantly limit her
ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in
substantial gainful activity (Step One) or if the claimant's impairment is not medically severe
(Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is
compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A
claimant suffering from a listed impairment or impairments "medically equivalent" to a listed
impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds
to Step Four, where the claimant must establish that she does not retain the residual functional
capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met,
the burden shifts to the Commissioner to establish at Step Five that work exists in significant
numbers in the national economy which the claimant, taking into account her age, education,
work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.
2007).  Disability benefits are denied if the Commissioner shows that the impairment which
precluded the performance of past relevant work does not preclude alternative work.  20 C.F.R. §
404.1520.

the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

## Decision of the Administrative Law Judge

At Step One, the ALJ found that Carrier had not engaged in any substantial gainful activity since May 8, 2012, the application date. [R. 18]. He found at Step Two that Carrier had medically determinable impairments of remote history (2004) of pelvic trauma and status post fracture of the right humerus. *Id.* However, he found the claimant did not have an impairment or combination of impairments that had significantly limited (or was expected to significantly limit) her ability to perform basic work-related activities for twelve consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments. *Id.* Accordingly, his inquiry stopped at that point, and the ALJ found that Carrier was not disabled at any time from May 8, 2012, through the date of his decision. [R. 21].

## Review

On appeal, Carrier asserts that the ALJ erred at Step Two of the sequential evaluation process and in his credibility analysis.

## Analysis

### Step Two Determination

Social Security Ruling ("SSR") 96-3p sets forth the process for conducting a step two determination: (1) the claimant must have a medically determinable impairment; (2) this impairment must reasonably be expected to produce the alleged symptoms; and (3) once the claimant establishes the requisite connection between the medically determinable impairment(s) and alleged symptom(s), the Commissioner is to then consider the  "intensity, persistence, or

functionally limiting effects of the symptom(s)" to determine whether the limitation is severe; that is, whether it has more than a minimal effect on the claimant's ability to do basic work activities.  SSR 96-3p, 1996 WL 374181.

The step two severity determination is based on medical factors alone and "does not include consideration of such vocational factors as age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  While the Step Two burden has been characterized as "*de minimis*," the mere presence of a condition is not sufficient to make a step two showing.  *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003). In determining whether a severe impairment exists, the Commissioner considers the "effect" of the impairment. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Williamson*, 350 F.3d at 1099-1100. Thus, when Congress categorized the severity requirement in the regulations, it noted that a claimed "physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the *cause of failure to obtain any substantial gainful work.*"  S.Rep. No. 1987, 83d Cong., 2d Sess., reprinted in 1954 U.S. Code Cong. & Ad. News 3710, 3730 (emphasis added); *Williamson*, 350 F.3d at 1100.

The ALJ concluded that Carrier's impairments were not singly or in combination severe. In reaching this conclusion, the ALJ addressed whether the impairments had significantly limited claimant's ability to perform basic work-related activities for 12 consecutive months. 20 C.F.R. § 416.921 *et seq.*[2]

---

[2] "Basic work activities" include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.  SSR 85-28 (PPS-122) 1985.  "[T]hese basic work factors are inherent in making a determination that an individual does not have a severe medical impairment."  *Id.*

In reliance on Dr. Gordon's psychological evaluation, the ALJ found Carrier had no psychological disturbance that would preclude her from gainful employment. [R. 20]. With respect to physical limitations, the ALJ acknowledged and discussed her significant injuries in the 2004 car accident, but noted that by March 20, 2007, Todd Swenning, M.D., of Tulsa Orthopedic Trauma Specialists wrote that the right humerus was "pretty well healed," her right elbow was stable to varus and valgus stress, and x-rays of the humerus showed a healed fracture with no evidence of hardware loosening. [R. 20, R. 398 (Ex. 8F)]. Additionally, he cited records indicating that the pelvis fixator was removed April 24, 2006. [R. 20, R. 355 (Ex. 7F)].

The ALJ also cited treatment notes from Michele Bucholtz, D.O., who examined Carrier on July 3, 2012, reported claimant had normal motor function, gait and stance, and noted that she engaged in moderate exercise and described herself as being sexually active. [R. 20, R. 329 (Ex. 5F)].

Additionally, the ALJ cited and relied on the report of the consultative physician, Dr. Patton, who stated that Carrier told him she had surgery on her pelvis four times and complained of ongoing pain, but was able to walk on her toes and heels without difficulty, did not appear to be in pain and was able to get on and off the exam table without difficulty. [R. 20, R. 283-284 (Ex. 2F)]. The ALJ noted Dr. Patton's findings that her grip strength was 5/5; her muscle masses were equal; her ranges of motion in her lumbar, thoracic and cervical spine were normal; her right knee, which she also claimed was painful, was normal upon inspection; and she appeared to be using her arm, hand and shoulder in a normal fashion. [R. 20, R. 284]. Finally, the ALJ stated that no medical records support the claimant's allegations of great pain and physical limitations. [R. 20].

Plaintiff also complains that the Commissioner failed to consider medical evidence submitted after the ALJ's November 12, 2013 decision. Specifically, on January 3, 2014,

counsel submitted a medical source statement signed by Dr. Beeson and dated December 13, 2013.  [R. 818-820 (Ex. 21F)].  In that statement, Dr. Beeson opined that because of her injuries from the motor vehicle accident, Carrier is unable to perform any work-related exertional activities; has limitations on climbing and balancing and on reaching, handling, fingering and feeling with her right hand and arm; and must avoid all exposure to extreme cold, heat, wetness, noise, vibration and hazards (machinery, dangerous equipment, heights, etc.). [R. 819-20 (Ex. 21F)].  The Appeals Council declined to consider the medical source statement because it was generated after the ALJ's November 12, 2013, decision.  [R. 2].

Pursuant to 20 C.F.R. §§ 404.970(b) and  416.1470(b), "the Appeals Council must consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (citations omitted).  Because the medical source statement was completed *after* the ALJ's November 12, 2013 decision, it is chronologically irrelevant and, therefore, was properly excluded.[3]

Claimant has failed to carry her burden of proof that her impairments, either singly or in combination, are severe, and substantial evidence supports the ALJ's step two determination.

**Credibility Determination**

Claimant also challenges the ALJ's credibility determination.  "[O]nce the requisite relationship between the medically determinable impairment(s) and the alleged symptom(s) is established, the intensity, persistence, and limiting effects of the symptom(s) must be considered

_____

[3] The court notes that on December 17, 2013, counsel for plaintiff submitted treatment notes from an October 14, 2013, visit by claimant to Clint W. Beeson, M.D.  [R. 821-822 (Ex. 22F)]. In that visit, Carrier sought treatment of lesions on her right leg where some warts had previously been frozen.  [R. 822].  This evidence is new and relates to the period on or before the date of the ALJ's decision, but does not appear to be material, nor does claimant contend, on appeal, that it should have been considered.

along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe."  SSR 96-3) (S.S.A.), 1996 WL 374181.  The ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. [R. 20].

"[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations, when supported by substantial evidence."  *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Id.* (internal quotation marks and citation omitted). "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

The ALJ, in assessing claimant's allegations of pain, was required to consider both the objective medical evidence and other evidence, including information about the claimant's prior work record, her own statements about symptoms, evidence submitted by her treating or nontreating source and observations by agency employees and other persons.  20 C.F.R. § 404.1529(c)(3). In making his credibility determination, the ALJ relied, *inter alia*, on the following evidence:

- No medical records supported Carrier's allegations of great pain and physical limitations;

- During the consultative examination by Dr. Gordon, claimant denied having any mental problems that would preclude her being employed;

- Claimant did not graduate from high school, sit for a GED, investigate vocational training or attempt to work;

- She takes care of her three children and told Dr. Gordon she cooks, cleans and goes grocery shopping; further, Dr. Gordon opined her direction appeared to be governed by her roles as a mother and homemaker.

- Although claimant's husband reported that his wife was limited in her standing, sitting, lifting and bending, he did not indicate she has any problem preparing food daily, bathing their young children, performing daily cleaning, cooking and laundry, or driving to stores to shop or to attend doctor appointments.

- Treating physician Dr. Bucholtz noted that the claimant had normal movement in all her extremities and that her motor function, gait and stance were normal.

This evidence provides substantial support for the ALJ's credibility determination. Accordingly, the court will not disturb the ALJ's decision.

## Conclusion

For the reasons set forth above, the Commissioner's decision is hereby **AFFIRMED.**

Entered this 29th day of August, 2016.

_____
Paul J. Cleary
United States Magistrate Judge